# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

      Plaintiff,

v.

LOS DAHDA (01) and PETER PARK (11),

      Defendant.

Case No. 12-20083-01/11-DDC

## MEMORANDUM AND ORDER

On December 12, 2019, after remand from the Tenth Circuit, the court sentenced Los Dahda to 135 months in prison. This matter comes before the court on pro se[1] defendant Los Dahda's Petition for Hearing Pursuant to 21 U.S.C. § 853(n) (Doc. 2776) and the United States' Motion to Dismiss Petition Regarding $84,700 and/or Motion for Summary Judgment (Doc. 2798). For reasons explained below, the court grants the government's motion to dismiss and dismisses Mr. Dahda's petition for hearing.

## I.      Background

On July 11, 2012, a grand jury charged that beginning in about January of 2005, Mr. Dahda, Mr. Park, and others conspired to possess with intent to distribute and to distribute cocaine and marijuana, and maintain drug-involved premises, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846 and 856. *See* Sealed Indictment (Doc. 192). The indictment also charged individual defendants with multiple other drug crimes. On October 31, 2012, a grand

---

[1] Because Mr. Dahda proceeds pro se, the court construes his filings liberally and holds them to a less stringent standard than formal pleadings drafted by lawyers. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the court does not assume the role of advocate for a pro se litigant. *Id.*

jury returned a superseding indictment which added eight defendants and additional charges.  *See* Sealed Superseding Indictment (Doc. 462) at 48.  Both the indictment and superseding indictment included forfeiture allegations.  They asserted that each defendant "shall forfeit to the United States, pursuant to Title 21, United States Code, Section 853 any property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of such offense, and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the offense."  Sealed Indictment (Doc. 192) at 45; Sealed Superseding Indictment (Doc. 462) at 48.  While the indictments listed specific property, they also noted that the property to be forfeited was "not limited to the [listed property]."  Sealed Indictment (Doc. 192) at 45; Sealed Superseding Indictment (Doc. 462) at 48.

On July 23, 2014, a jury found Mr. Dahda guilty on multiple counts of the Superseding Indictment (Doc. 462).  The guilty verdicts included conspiracy to manufacture marijuana, to possess marijuana with intent to distribute it, to distribute marijuana and to maintain a drug-involved premises, a violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846 and 856 (Count 1), maintaining a drug-involved premises, a violation of 21 U.S.C. § 856 (Count 31), two counts of distributing marijuana, violations of 21 U.S.C. § 841(a)(1), (b)(1)(D) (Counts 26, 36), six counts of using a communication facility to facilitate a drug trafficking offense, violations of 21 U.S.C. § 843(b) (Counts 38, 39, 41, 42, 45 and 46), three counts of possession of marijuana with intent to distribute, violations of 21 U.S.C. § 841(a)(1), (b)(1)(D) (Counts 43, 49 and 85), and two counts of attempted possession of marijuana with intent to distribute, violations of 21 U.S.C. § 841(a)(1), (b)(1)(D) (Counts 73 and 88).[2]

---

[2]        On September 30, 2015, United States District Judge Kathryn H. Vratil sentenced Mr. Dahda to 189 months in prison and imposed a fine of $16,985,250.  On April 4, 2017, the Tenth Circuit affirmed Mr. Dahda's convictions and sentence of imprisonment, but reversed and remanded for the court to reconsider the amount of the fine.  *United States v. Los Dahda*, 853 F.3d 1101, 1118 (10th Cir. 2017),

During the investigation of the conspiracy, on May 25, 2012, the government seized $84,700 from a FedEx package which defendant Peter Park had shipped to defendant Wayne Swift in California.  In connection with the seizure, Count 88 of the superseding indictment charged that on or about May 22, 2012, Mr. Dahda, Mr. Park, and Mr. Swift knowingly and intentionally attempted to possess with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1).  *See* Superseding Indictment (Doc. 462) at 38.  At trial, a jury found Mr. Dahda guilty on Count 88.  For Mr. Park and Mr. Swift, the government dismissed Count 88 based on their plea agreements.

The presentence investigation reports for Mr. Dahda, Mr. Park, and Mr. Swift reflect that (1) on May 22, 2012, Mr. Park told Mr. Swift that he planned to send him $84,700 by referencing "we got" $80,000 and "the big one" had $4,700, (2) later on May 22, Mr. Park sent a FedEx package from Kansas to Mr. Swift in California; (3) after the government detained the package on May 23, law enforcement agents found $84,700 in U.S. currency in the package, along with a yellow piece of paper with the handwritten message "80k (us) L- 4,700;" (4) through investigation, the government verified that Mr. Park had provided $80,000, Los Dahda had provided $4,700 and that the entire $84,700 was to be used to purchase high grade marijuana to distribute in Kansas.  Mr. Dahda's Presentence Investigation Report (Doc. 2687), ¶ 109; Mr. Park's Presentence Investigation Report (Doc. 2058), ¶ 109; Mr. Swift's Presentence Investigation Report (Doc. 1674), ¶ 121.

On November 17, 2015, at his sentencing hearing, Mr. Park agreed to forfeiture of the $84,700 that the government had seized on May 25, 2012.  *See* Forfeiture Agreement (Doc.

---

*aff'd*, 138 S. Ct. 1491 (2018).  On December 12, 2019, Judge Vratil resentenced Mr. Dahda to a controlling term of 135 months in prison, three years of supervised release, and no fine.  On December 20, 2019, Mr. Dahda appealed.  *See* Notice Of Appeal (Doc. 2719).

2345).  In particular, Mr. Park agreed that the $84,700 seized from the FedEx package

"constitutes or was derived from proceeds as a result of the commission of Count 1 of the

Superseding Indictment, and/or was used to facilitate Count 1."  *Id.*, ¶ 3.  As part of the judgment

in Mr. Park's case, the court ordered forfeiture of Mr. Park's interest in the property specified in

the forfeiture allegations of the superseding indictment.  *See* Judgment in a Criminal Case (Doc.

2207) filed November 19, 2015 at 6.  On March 11, 2020, in Mr. Park's case, the court entered a

preliminary order of forfeiture for the $84,700.  *See* Preliminary Order of Forfeiture (Doc. 2759).

The court found that the $84,700 seized on May 25, 2012  "constitutes or is derived from

proceeds obtained as a result of [Mr. Park's] commission of Count 1 of the Superseding

Indictment," *i.e.* conspiracy to manufacture marijuana, to possess marijuana with intent to

distribute it, to distribute marijuana and to maintain a drug-involved premises.  *Id.* at 2.

Beginning on August 30, 2016 and ending on September 28, 2016, the government gave

notice of its intent to forfeit certain property in Mr. Park's case.  *See* Declaration of Publication

(Doc. 2393).  Beginning on March 13, 2020, after the government determined that the prior

notice did not include the money from the FedEx package, the government gave notice of the

forfeiture of property including the money in the FedEx package.  *See* Declaration of Publication

(Doc. 2825) (notice from March 13, 2020 through April 11, 2020).

On April 6, 2020, Mr. Dahda filed a Petition for Hearing Pursuant to 21 U.S.C. § 853(n)

(Doc. 2776).  Mr. Dahda seeks return of the $84,700 that law enforcement officers seized from

the FedEx package that was shipped from Mr. Park to Mr. Swift in California.  Doc. 2776 at 2.

Mr. Dahda asserts that the $84,700 solely belongs to him and that he intended to use the money

to purchase land in California.  *Id.*  He alleges that the money came from working as a "Union

Pipefitter, Savings and other business transactions." *Id.* The government has filed a motion to dismiss Mr. Dahda's petition (Doc. 2798).[3]

## II.     Legal Standard

In an ancillary proceeding, a court may dismiss a third-party petition for lack of standing, for failure to state a claim, or for any other lawful reason. *See* Fed. R. Crim. P. 32.2(c)(1)(A). "[A] motion to dismiss a third-party petition in a forfeiture proceeding prior to discovery or a hearing should be treated like a motion to dismiss a civil complaint under Federal Rule of Civil Procedure 12(b)." *United States v. Salti*, 579 F.3d 656, 667 (6th Cir. 2009) (quoting *Pacheco v. Serendensky*, 393 F.3d 348, 352 (2d Cir. 2004)). This protocol means that a pleading must contain no more than "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A petition "does not need detailed factual allegations," but a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

A petition under 21 U.S.C. § 856(n) must set forth a "facially colorable interest in the seized property." *Salti*, 579 F.3d at 667. As with a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must assume that the factual allegations in the petition are true. *See* Fed. R. Crim. P. 32.2(c)(1)(A) ("For purposes of the motion [to dismiss], the facts set forth in the petition are assumed to be true."); *Iqbal*, 556 U.S. at 678. But the court is "not bound to accept

---

[3]     In the alternative, the government seeks summary judgment on Mr. Dahda's petition. Because the court finds that Mr. Dahda's petition should be dismissed and the government has not formally presented a statement of uncontroverted facts or otherwise followed the format of a summary judgment motion under D. Kan. Rule 56.1, the court declines to consider the government's alternative motion for summary judgment.

as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.  To

survive a motion to dismiss, a pleading "must contain sufficient factual matter, accepted as true,

to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*,

550 U.S. at 570).  A claim is plausible on its face when the petitioner "pleads factual content that

allows the court to draw the reasonable inference" that he is entitled to relief.  *Id.*  "The

plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

possibility" that petitioner is entitled to relief.  *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also*

*Twombly*, 550 U.S. at 555 ("[f]actual allegations must be enough to raise a right to relief above

the speculative level[.]") (citations omitted).

## III.    Analysis

Under federal law, the government has the option to pursue three types of forfeitures for

seized property:  administrative, civil, and criminal.  *See United States v. Hill*, No. 4:17CR310

RLW(SPM), 2020 WL 2750291, at *10 (E.D. Mo. Apr. 7, 2020), *report and recommendation*

*adopted*, No. 4:17-CR-310 RLW, 2020 WL 2747744 (E.D. Mo. May 27, 2020).  Here, for the

$84,700 that law enforcement officers seized from the FedEx package, the government pursued

criminal forfeiture in Mr. Park's case.  As noted above, on March 11, 2020, the court entered a

preliminary forfeiture order.  A preliminary forfeiture order is issued "without regard to any third

party's interest in the property." Fed. R. Crim. P. 32.2(b)(2)(A).  A third party who claims a

"legal interest" in the forfeited property must request an ancillary "hearing to adjudicate the

validity of his alleged interest in the property." 21 U.S.C. § 853(n)(2); *see* Fed. R. Crim.

P. 32.2(c) ("If, as prescribed by statute, a third party files a petition asserting an interest in the

property to be forfeited, the court must conduct an ancillary proceeding.").  As a third party to

the criminal forfeiture in Mr. Park's case, Mr. Dahda's sole remedy for return of the $84,700 is

this ancillary proceeding under 21 U.S.C. § 853(n).  *See* 21 U.S.C. § 853(k) ("Except as provided in subsection (n), no party claiming an interest in property subject to forfeiture under this section" may "intervene in a trial or appeal of a criminal case involving the forfeiture of such property under this section."); *see also Libretti v. United States*, 516 U.S. 29, 44 (1995) ("Once the Government has secured a stipulation as to forfeitability, third-party claimants can establish their entitlement to return of the assets only by means of the hearing afforded under 21 U.S.C. § 853(n)."); *United States v. Mar. Life Caribbean Ltd.*, 913 F.3d 1027, 1035 (11th Cir. 2019) ("[A]n ancillary proceeding constitutes the sole means by which a third-party claimant can establish entitlement to return of forfeited property.") (quotation marks and citation omitted), *cert. denied*, 140 S. Ct. 858 (2020).

### A.  Timeliness of Government's Motion for Preliminary Forfeiture

Mr. Dahda argues that the government's criminal forfeiture notice in March of 2020 is untimely under 19 U.S.C. § 1621 because it was not filed within five years after the government discovered the offense conduct.  *See* Doc. 2814 at 1.  Initially, the court finds that Mr. Dahda cannot raise a timeliness objection to the criminal forfeiture in Mr. Park's case.  Mr. Park—the defendant who is subject to the criminal forfeiture—received timely notice that the government sought forfeiture of the money seized from the FedEx package.  Indeed, on November 17, 2015, well within five years of the government's discovery of the offense conduct, Mr. Park agreed to forfeit the money.  *See* Forfeiture Agreement (Doc. 2345).

Even if Mr. Dahda could assert a timeliness objection in this ancillary proceeding after the court has entered a preliminary order of forfeiture in Mr. Park's criminal case, the government's request for forfeiture is timely.  Mr. Dahda relies on 19 U.S.C. § 1621, which provides that any suit or action to recover any "forfeiture of property accruing under the customs

laws" must be brought within five years of the time when the offense was discovered.  The five-year statute of limitations in Section 1621 applies to civil in rem forfeiture proceedings, not criminal forfeitures.  *See United States v. Duboc*, 694 F.3d 1223, 1228 (11th Cir. 2012) (§ 1621 applies to in rem civil forfeiture proceedings, not in personam criminal forfeiture judgments). *But cf.* 21 U.S.C. § 881(d) (provisions related to seizure and judicial forfeiture of property for customs laws apply to seizures and forfeiture incurred under drug laws "as applicable and not inconsistent with the provisions" in drug laws).  For criminal forfeitures, the government must assert forfeiture of property in an indictment or information.  *See* Fed. R. Crim. P. 32.2(a) ("A court must not enter a judgment of forfeiture in a criminal proceeding unless the indictment or information contains notice to the defendant that the government will seek the forfeiture of property as part of any sentence in accordance with the applicable statute.").  Therefore, the statute of limitations for criminal forfeitures essentially is the same as the statute of limitations for bringing an indictment or information for the underlying offenses.

Here, in July and October of 2012, the indictment and superseding indictment included a forfeiture allegation which asserted that each defendant "shall forfeit to the United States, pursuant to Title 21, United States Code, Section 853 any property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of such offense, and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the offense."  Sealed Indictment (Doc. 192) at 45; Sealed Superseding Indictment (Doc. 462) at 48. While the indictments listed specific property that did not include the $84,700 from the FedEx package, they noted that the property to be forfeited was "not limited to the [listed property]." Sealed Indictment (Doc. 192) at 45; Sealed Superseding Indictment (Doc. 462) at 48.  The indictments provided Mr. Park and Mr. Dahda adequate notice that the government sought

forfeiture of the money seized from the FedEx package. *See* Fed. R. Crim. P. 32.2(a) ("The indictment or information need not identify the property subject to forfeiture or specify the amount of any forfeiture money judgment that the government seeks."); *see also United States v. Lazarenko*, 504 F. Supp. 2d 791, 796 (N.D. Cal. 2007) ("Rule 32.2 and its legislative history make clear that a defendant is not entitled to an itemized list of the property to be forfeited as part of the indictment."). In addition, on November 17, 2015, well within five years of the government's discovery of the offense conduct, Mr. Dahda's counsel received notice—which gave Mr. Dahda constructive notice—that Mr. Park had agreed to forfeit the money found in the package because it "constitutes or was derived from proceeds as a result of the commission of Count 1 of the Superseding Indictment, and/or was used to facilitate Count 1." Forfeiture Agreement (Doc. 2345), ¶ 3.

Mr. Dahda argues that the government is initiating "new proceedings" in 2020. Response to Reply (Doc. 2823) at 1. At sentencing in Mr. Park's criminal case in November of 2015, the court ordered forfeiture of Mr. Park's interest in the property specified in the forfeiture allegations of the superseding indictment. *See* Judgment in a Criminal Case (Doc. 2207) at 6. The government's subsequent request for forfeiture of money in the FedEx package based on Mr. Park's agreement at sentencing merely continues Mr. Park's criminal proceedings. Mr. Dahda cites no authority for his proposition that the government is required to request a preliminary order of forfeiture within a certain time period or that a forfeiture order cannot be amended. *See Duboc*, 694 F.3d at 1228 ("[N]o provision of 21 U.S.C. § 853 or the Federal Rules of Criminal Procedure otherwise limits the time during which the government may move to amend an existing criminal forfeiture order to seize property subject to forfeiture under § 853."); *United States v. Jackson*, No. CRIM. 05-0169-WS-C, 2011 WL 2262922, at *3 (S.D. Ala.

June 8, 2011) (while the government failed to explain its delay of more than four years, claimants did not establish that the delay prohibited the government from acquiring a final order of forfeiture).  For these reasons, the court overrules Mr. Dahda's objection to the timeliness of the government's request for forfeiture of the money in the FedEx package.

### B.  Waiver

Mr. Dahda also argues that the government waived its right to seek forfeiture of money found in the FedEx package because it did not seek forfeiture in his criminal case after trial or at sentencing.  *See* Reply (Doc. 2814) at 2.  As explained above, the government has the option to choose the type of forfeiture:  criminal, civil, or administrative.  *See United States v. Louthian*, 756 F.3d 295, 307 n.12 (4th Cir. 2014) (choice whether to pursue criminal or civil forfeiture often a tactical one committed to the sound discretion of the United States Attorney); *United States v. Houshar*, No. CRIM.A. 01-272-02, 2006 WL 562206, at *6 n.10 (E.D. Pa. Mar. 7, 2006) ("it was the government's prerogative to initiate parallel [civil] proceedings, and even if [defendant] would have preferred to assert his claims as part of his criminal proceedings, in order to protect his rights he was required to follow the government's lead").  Here, the government sought forfeiture of money in the FedEx package in Mr. Park's criminal case.  Mr. Dahda cannot require that the government pursue criminal forfeiture in his own case so that he can exercise his right to a jury trial.  As explained above, as a third party to the criminal forfeiture in Mr. Park's case, Mr. Dahda's sole remedy for seeking return of the $84,700 is this ancillary proceeding under 21 U.S.C. § 853(n).

### C.  Nexus Between $84,700 and Drug Conspiracy in Count 1

Mr. Dahda argues that the government has failed to establish a nexus between the money seized from the FedEx package and the criminal conspiracy.  *See* Reply (Doc. 2814) at 2.  In this

ancillary proceeding under Section 853, the court determines, as between Mr. Dahda and the government, who has the greater claim to the forfeited property.  *United States v. Hernandez-Morales*, No. CR13-4061-MWB, 2014 WL 7252045, at *5 (N.D. Iowa Dec. 16, 2014), *report and recommendation adopted*, No. CR13-4061-MWB, 2015 WL 416675 (N.D. Iowa Jan. 30, 2015).  As a third party, however, Mr. Dahda cannot relitigate the merits of the prior forfeitability determination in Mr. Park's case.  *See United States v. Andrews*, 530 F.3d 1232, 1236 (10th Cir. 2008) ("a third party has no right to challenge the preliminary order's finding of forfeitability"); *United States v. Davenport*, 668 F.3d 1316, 1321 (11th Cir. 2012) (defendant lacks standing to challenge co-defendant's preliminary order of forfeiture).[4]

### D.  Discovery

Mr. Dahda argues that before he can make a "declaration about [specific] times and places, he needs access to his "documentation and receipts" in the possession of the government.  *See* Reply (Doc. 2814) at 3.  In a sur-reply, Mr. Dahda specifies that he seeks his 2011 tax returns and the itemized lists attached to the search warrant applications for 2845 Dune Circle in Hayward, California, the "Via Toledo" address, along with the Kansas and Missouri addresses.  *See* Response to United States' Reply (Doc. 2823) at 3.  Mr. Dahda apparently seeks this information as part of an attempt to establish that the $84,700 was not related to the drug conspiracy in Count 1.  As explained above, Mr. Dahda cannot relitigate the merits of the prior forfeitability determination in Mr. Park's case.  Mr. Dahda has not shown that further discovery

---

[4]      Even if Mr. Dahda could raise a challenge in this ancillary proceeding, it would be frivolous in light of Mr. Park's forfeiture agreement—which acknowledged that the money was proceeds from or used to facilitate the conspiracy—and the jury verdict in Mr. Dahda's criminal case.  In particular, Mr. Dahda has not asserted a plausible theory alleging how—based on the evidence presented at trial—the jury could have found him guilty on Count 88 without also finding that the money in the FedEx package was purchase money for marijuana.

is necessary for the court to address the legal sufficiency of his petition under 21 U.S.C.

§ 853(n).  Therefore, the court overrules Mr. Dahda's request for discovery.

### E.  Lack of Standing and Failure to State a Claim

The government asserts that Mr. Dahda's petition fails to state a claim for recovery of the

$84,700 seized from the FedEx package.  A third-party petition must "set forth the nature and

extent of the petitioner's right, title, or interest in the property [subject to forfeiture], the time and

circumstances of the petitioner's acquisition of the right, title, or interest in the property, [and]

any additional facts supporting the petitioner's claim."  21 U.S.C. § 853(n)(3).  A party "seeking

to challenge the government's forfeiture of money or property used in violation of federal law

must first demonstrate a legal interest in the seized item sufficient to satisfy the court of its

standing to contest the forfeiture."  *United States v. Timley*, 507 F.3d 1125, 1129 (8th Cir. 2007)

(quotation marks, alterations and citation omitted).  To establish standing, Mr. Dahda must allege

(A) a "legal right, title, or interest in the property" that vested in him—rather than Mr. Park—or

was "superior to any right, title, or interest" of Mr. Park "at the time of the commission of the

acts which gave rise to the forfeiture" or (B) that he "is a bona fide purchaser for value of the

right, title or interest in the property and was at the time of the purchase reasonably without

cause to believe that the property was subject to [criminal] forfeiture."  21 U.S.C.

§ 853(n)(6)(A), (B); *see* 21 U.S.C. § 853(n)(2) (third-party petitioners must assert a "legal

interest" in the disputed property); *see also Salti*, 579 F.3d at 667 (under 21 U.S.C. § 853(n)(6) in

order to establish Article III standing, petitioner must allege "a facially colorable interest in the

seized property").

The court first evaluates whether Mr. Dahda has alleged that he was a bona fide

purchaser for value under Section 853(n)(6)(B).  In his petition and subsequent briefing, Mr.

Dahda does not assert such a theory. The bona-fide-purchaser exception "protects a third party who acquires a legal interest in property for value *after* the acts giving rise to the forfeiture have occurred and who had no reason to believe that the property was subject to forfeiture." *United States v. Huntington Nat'l Bank*, 682 F.3d 429, 433 (6th Cir. 2012) (emphasis added). Mr. Dahda never asserts that he purchased anything from Mr. Park after the acts giving rise to the forfeiture. Mr. Dahda's allegation that the cash eventually was intended to use to purchase land is insufficient to invoke the bona-fide-purchaser exception because the forfeited property was the cash, not the land that purportedly was to be purchased. Therefore, Mr. Dahda failed to allege a legal interest as a bona fide purchaser under Section 853(n)(6)(B). *See United States v. Akhtar*, No. 17-2339, 2018 WL 5883930, at *2 (6th Cir. Sept. 19, 2018) (bona-fide-purchaser exception does not apply to unsecured creditors); *United States v. Watkins*, 320 F.3d 1279, 1283 (11th Cir. 2003) ("[U]nsecured or general creditors cannot be considered bona fide purchasers for value within the meaning of § 853(n)(6)(B).").

Next, the court evaluates whether Mr. Dahda has alleged a "legal right, title, or interest in the property" that vested in him—rather than Mr. Park—or was "superior to any right, title, or interest" of Mr. Park "at the time of the commission of the acts which gave rise to the forfeiture" 21 U.S.C. § 853(n)(6)(A). Under Subsection 853(n)(6)(A) and the "relation-back" doctrine, all right, title, and interest property subject to forfeiture based on a criminal offense "vests in the United States upon the commission of the act giving rise to forfeiture." 21 U.S.C. § 853(c); *see Huntington Nat'l Bank*, 682 F.3d at 433 ("After the commission of the criminal acts, title to the forfeitable property, by operation of the relation-back clause, actually belongs to the government.") (quoting *United States v. Harris*, 246 F.3d 566, 575 (6th Cir. 2001)); *Timley*, 507 F.3d at 1130 (title to the forfeited property vests in the United States at the time of the

defendant's criminal act).  In the conspiracy context, the government's interest in forfeited cash

vests when the conspiracy begins.  *See United States v. Catala*, 870 F.3d 6, 11 (1st Cir. 2017)

(under Section 853, government interest in forfeited cash vested as soon as defendant began

selling drugs and before any proceeds started to reach him); *United States v. Watts*, 786 F.3d

152, 167 (2d Cir. 2015) (under Section 853, all proceeds of criminal conspiracy automatically

vested in government at start of conspiracy).  Therefore, to prevail under § 853(n)(6)(A) in the

conspiracy context, a third party must show that he had a "legal interest in the forfeited property"

before the conspiracy began.  *Watts*, 786 F.3d at 166 (citation omitted); *see also Timley*, 507

F.3d at 1130 ("a third party who had a legal interest in the forfeited property before the

underlying crime was committed can prevail in the ancillary proceeding on the ground that he

had an interest in the property before the government's interest vested") (citing *United States v.

Nava*, 404 F.3d 1119, 1129 (9th Cir. 2005)).

Under Section 853(n)(6), the types of superior interest that will support standing include

a "lien, mortgage, recorded security device, constructive trust, valid assignment, or the like."

*United States v. Campos*, 859 F.2d 1233, 1238-39 (6th Cir. 1988).  Ownership interests are

defined by state law.  *Andrews*, 530 F.3d at 1238.

Mr. Dahda alleges that (1) the $84,700 belongs solely to him, (2) the "$80,000.00 was

already packaged and sealed prior to [his] possession of the $4,700.00," (3) "[he] had the money

in [his] control until it was in Fed-X drop box or counter guys hand," (4) the package identified

Mr. Park as the sender, and (5) Mr. Park did not have Mr. Dahda's permission to spend the

money to purchase marijuana.  Doc. 2776 at 2; *see* Doc. 2776 at 1 (package listed Peter Park as

sender and Wayne Swift as receiver); *id.* at 2 ("Neither Park or Swift had an agreement or

permission to use those funds to purchase marijuana"); Doc. 2814 at 2 (Swift testified that Park

did not have Mr. Dahda's permission to spend that money).

Although Mr. Dahda's petition is difficult to follow, the gravamen of his claim is that he

lawfully acquired the $84,700 and had Mr. Park send it to Mr. Swift in California to hold for Mr.

Dahda's later purchase of land.[5]  In general, whoever has possession of U.S. currency—a bearer

instrument—is presumed to be the rightful owner.  *See* K.S.A. 84-3-201(b) ("If an instrument is

payable to bearer, it may be negotiated by transfer of possession alone."); *see also United States*

*v. Currency $11,331*, 482 F. Supp. 2d 873, 881 (E.D. Mich. 2007) (under Michigan law, U.S.

currency normally considered a bearer instrument).  Once Mr. Dahda gave the money to Mr.

Park, Mr. Park became the presumed owner of the cash.  *See United States v. Tarraf*, 725 F.

Supp. 2d 625, 631 (E.D. Mich. 2010) (petitioners' assertion that they were the true owners of

cash did not support showing of superior interest because "cash is defined as a bearer

instrument" under state law and "whoever has possession is presumed to be that instrument's

owner").  At most, Mr. Dahda has alleged that when he transferred the money to Mr. Park, he

became a general creditor of Mr. Park for the cash that was forfeited.[6]  As an unsecured general

---

[5]      Mr. Dahda fails to allege when he acquired the money, who packaged the money, under what
theory that he asserts that he had "control" over the money until the package was given to FedEx for
shipment, how he relinquished control of the package, or Mr. Park's precise role in handling the money
and sending the package.  As explained above, however, Mr. Dahda cannot challenge the court's finding
that the $84,700 seized on May 25, 2012  "constitutes or is derived from proceeds obtained as a result of
[Mr. Park's] commission of Count 1 of the Superseding Indictment," *i.e.* conspiracy to manufacture
marijuana, to possess marijuana with intent to distribute it, to distribute marijuana and to maintain a drug-
involved premises.  Preliminary Order of Forfeiture (Doc. 2759) at 2.  The court thus liberally construes
the petition to assert that Mr. Dahda lawfully acquired the money, but that after he gave the money to Mr.
Park, Mr. Park used it—without Mr. Dahda's knowledge—in an attempt to purchase marijuana.

[6]      *See United States v. Butt*, 930 F.3d 410, 414 (5th Cir. 2019) (third party merely an unsecured
creditor when petition asserted only an unsecured interest in the forfeited cash), *cert. denied sub nom.*
*Salahuddin v. United States*, 140 S. Ct. 2655 (2020); *Salti*, 579 F.3d at 669 (allegation that funds in bank
account were previously in third party's name does not establish a cognizable interest in account because,
at most, third party is a general creditor of defendant); *United States v. Salkey*, No. 2:15CR146, 2016 WL
3766308, at *3 (E.D. Va. July 11, 2016) (assertion that defendant initially acquired money from

creditor, Mr. Dahda lacks standing under Section 853(n)(6)(A) because he did not have a legal interest in the cash.[7]  In sum, Mr. Dahda's petition fails to allege that "legal right, title, or interest" in the $84,700 vested in him—rather than Mr. Park—or that his interest was "superior to any right, title, or interest" of Mr. Park "at the time of the commission of the acts which gave rise to the forfeiture."

Although Mr. Dahda's petition does not assert that he had a constructive trust over the money he gave to Mr. Park, Mr. Dahda has not alleged sufficient facts—either in the petition or subsequent briefing—to warrant such relief.  *See Salti*, 579 F.3d at 669–70 (allegation that the funds to be forfeited were previously in third party's name does not, by itself, confer standing, but is relevant to contention that third party is the beneficiary of a constructive trust in funds); *Andrews*, 530 F.3d at 1237 (even if a constructive trust can satisfy the requirements of § 853(n)(6)(A), district court did not abuse its discretion in finding that claimant not entitled to a

---

legitimate bank loan, "may show how he initially obtained the money and had a legal interest in it at one time, [but] it fails to provide any facts demonstrating Petitioner had any title or legal claim to the money after it was deposited" into criminal defendant's bank account); *United States v. Ceballos-Lepe*, 977 F. Supp. 2d 1085, 1090–91 (D. Utah 2013) (even if third party could trace money found in defendant's residence to legitimate source, party lacks standing because absent security interest in those specific funds, third party transferred "possession, control, and title in loaned funds" to defendant borrower); *United States v. $7,500.00 in U.S. Currency*, 2:12-CV-1081, 2013 WL 1867532, *1 (D. Utah May 3, 2013) (claimant could not show possession, control, title, or financial stake sufficient for standing where claimant left funds at another's home as part of a loan transaction); *see also United States v. Eldick*, 223 F. App'x. 837, 840 (11th Cir. 2007) ("A fraud victim who voluntarily transfers property to the defendant has a cause of action in tort against the defendant but has no greater interest in the forfeited property than does any other general creditor.") (quotation marks and citation omitted).

[7]      *See DSI Assocs. LLC v. United States*, 496 F.3d 175, 184 (2d Cir. 2007) (as a general creditor, claimant does not possess a "legal right, title, or interest in the property" that was forfeited as required for standing under section 853(n)(6)(A)); *Watkins*, 320 F.3d at 1283–84 (general creditors only have interest in the estate of a debtor as a whole because they don't have a security interest in a specific asset); *Campos*, 859 F.2d at 1238 (debt of a trade creditor and money owed to an employee did not create vested rights under § 853(n)(6)(A)); *see also Catala*, 870 F.3d at 10 (since proceeds from a crime do not precede the commission of the crime, the government's interest in proceeds forfeited pursuant to § 853(a)(1) will almost always pre-date that of a third party who is a general creditor); *Watts*, 786 F.3d at 166 ("[A] petitioner is unlikely ever to prevail . . . where the forfeited property consists of 'proceeds' derived from or traceable to a criminal offense").

constructive trust). Under Kansas law, a constructive trust is a remedy for unjust enrichment. *Nelson v. Nelson*, 288 Kan. 570, 589, 205 P.3d 715, 729 (2009) ("[T]he imposition of a constructive trust is a remedial device designed to prevent unjust enrichment by one who has an equitable duty to convey property to whom the property justly belongs"). Unjust enrichment requires that "(1) a benefit has been conferred upon the defendant, (2) the defendant retains the benefit, and (3) under the circumstances, the defendant's retention of the benefit is unjust." *Estate of Draper v. Bank of Am., N.A.*, 288 Kan. 510, 510, Syl. ¶ 6, 205 P.3d 698, 702, Syl. ¶ 6 (2009).

Here, Mr. Dahda has not alleged that Mr. Park retained a benefit or that absent a constructive trust, Mr. Park will be unjustly enriched. Under Mr. Dahda's theory, Mr. Park simply shipped the money on Mr. Dahda's behalf—Mr. Park did not retain anything. Mr. Dahda failed to plead a plausible theory for the imposition of a constructive trust.[8] *Cf. United States v. Currency $11,331*, 482 F. Supp. 2d 873, 882–83 (E.D. Mich. 2007) (constructive trust created where father had given money to his daughter to pay her legitimate debts, but the money was seized in connection with an illegal drug transaction).

Even if the court assumes that Mr. Dahda could allege a plausible interest in the cash, Mr. Dahda has not shown that his interest vested before the start of the conspiracy in approximately 2005. Mr. Dahda alleges that he acquired the $84,700 "from working as a Union Pipefitter,

---

[8] In any event, the court would decline to award forfeited funds to Mr. Dahda in this ancillary proceeding because the jury necessarily found him guilty of using those same funds to purchase marijuana. *See Andrews*, 530 F.3d at 1238–39 (when a district court determines that granting relief upon an equitable theory such as constructive trust would lead to an inequitable result, it may in its discretion decline to do so). In addition, a constructive trust is inconsistent with the court's findings in Mr. Park's criminal case that the money "constitutes or is derived from proceeds obtained as a result of [Mr. Park's] commission of Count 1 of the Superseding Indictment." Preliminary Order of Forfeiture (Doc. 2759) at 2. As explained above, Mr. Dahda cannot relitigate the issue in this ancillary proceeding.

Savings, and other business transactions," Doc. 2776 at 2, but he has not alleged the "time and circumstances of [his] acquisition of the right, title, or interest" in the cash. 21 U.S.C. § 853(n)(3). Likewise, to the extent that one can read his petition to request a constructive trust, the effective date of the constructive trust is the date of Mr. Park's wrongful act. *See U.S. Dep't of Energy v. Seneca Oil Co. (In re Seneca Oil Co.)*, 906 F.2d 1445, 1453 (10th Cir. 1990) (in the bankruptcy context, "the effective date of the constructive trust is the date the wrongful act occurred") (emphasis omitted). Mr. Dahda's conclusory allegations are insufficient to plausibly assert that his interest vested in the cash before the start of the conspiracy some seven years earlier. Therefore, Mr. Dahda has not alleged that his purported interest in the cash would be superior to the government's interest. *See Watts*, 786 F.3d at 167 (because the contested funds only came into third party's ownership after start of conspiracy, third party cannot "colorably assert" that its interest in the property vested or was superior to any interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture); *United States v. Laster*, No. CR-14-332-R, 2015 WL 5179021, at *2 (W.D. Okla. Sept. 3, 2015) (for standing, third party must allege that interest in forfeited property vested before start of drug conspiracy); *cf. United States v. Hooper*, 229 F.3d 818, 822 (9th Cir. 2000) (for example, claimant may prevail by showing that she had an interest in the family car that preceded her spouse's use of the car for criminal activity).

In sum, Mr. Dahda's petition fails to allege that he has an interest in the forfeited cash or provide relevant factual allegations about the time and circumstances when he acquired the cash before he gave it to Mr. Park. Mr. Dahda's conclusory allegations are legally insufficient to show that he acquired a legal interest in the money that vested before the beginning of the conspiracy. Therefore, the court dismisses Mr. Dahda's petition for lack of standing and for

failing to state a claim on which relief can be granted.  *See Akhtar*, 2018 WL 5883930, at *1–2 (defendant's wife failed to state a claim to funds in her accounts that were derived from her employment and from services that she provided to defendant's company because claim was "too conclusory to establish a claim to superior title to the funds").

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Los Dahda's Petition for Hearing Pursuant to 21 U.S.C. § 853(n) (Doc. 2776) is dismissed.

**IT IS FURTHER ORDERED BY THE COURT THAT** the United States' Motion to Dismiss Petition Regarding $84,700 and/or Motion for Summary Judgment (Doc. 2798) is granted.

**IT IS SO ORDERED.**

**Dated this 2nd day of December, 2020, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**