# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

     Plaintiff,

v.

LOS ROVELL DAHDA (01),

     Defendant.

Case No. 12-20083-01-DDC

## MEMORANDUM AND ORDER

On December 12, 2019, after remand from the Tenth Circuit, the court sentenced Los Dahda to 135 months in prison. On January 8, 2021, the Tenth Circuit affirmed. This matter comes before the court on pro se[1] defendant Los Dahda's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2225 (Doc. 2952). The government has filed a response in opposition to Mr. Dahda's motion (Doc. 2965). Mr. Dahda did not file a reply. For reasons explained below, the court denies Mr. Dahda's motion.

## I.    Background

On July 11, 2012, a grand jury charged that Mr. Dahda and others, beginning in about January of 2005, conspired to possess with intent to distribute and distribute cocaine and marijuana, and maintain drug-involved premises, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846 and 856. *See* Sealed Indictment (Doc. 192). The indictment also charged individual defendants with multiple other drug crimes. On July 23, 2014, a jury found Mr.

---

[1] Because Mr. Dahda proceeds pro se, the court construes his filings liberally and holds them to a less stringent standard than formal pleadings drafted by lawyers. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the court does not assume the role of advocate for a pro se litigant. *Id.*

Dahda guilty on multiple counts of the Superseding Indictment (Doc. 462) including conspiracy to manufacture marijuana, possess marijuana with intent to distribute it, distribute marijuana, and maintain a drug-involved premises, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846 and 856 (Count 1), maintaining a drug-involved premises, in violation of 21 U.S.C. § 856 (Count 31), two counts of distributing marijuana, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(D) (Counts 26, 36), six counts of using a communication facility to facilitate a drug trafficking offense, in violation of 21 U.S.C. § 843(b) (Counts 38, 39, 41, 42, 45 and 46), three counts of possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(D) (Counts 43, 49 and 85), and two counts of attempted possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(D) (Counts 73 and 88).  As it applied to the agreement to manufacture marijuana, possess marijuana with intent to distribute it, and distribute marijuana, the jury found that "the overall scope of the agreement involved more than 1,000 kilograms of marijuana."  Instructions To The Jury (Doc. 1430) filed July 23, 2014, No. 19.

At the original sentencing, the court attributed 907 kilograms of marijuana to Mr. Dahda. Presentence Investigation Report (Doc. 2049) filed September 23, 2015, ¶ 414.  Because Mr. Dahda's offense involved at least 700 kilograms but less than 1,000 kilograms of marijuana, his base offense level was 28.  U.S.S.G. § 2D1.1(c)(6); *see* Presentence Investigation Report (Doc. 2049), ¶ 415.  The court added two levels because Mr. Dahda maintained a premises for the purpose of manufacturing or distributing a controlled substance, U.S.S.G. § 2D1.1(b)(12), and added four levels because he acted as an organizer or leader of criminal activity involving five or more participants, U.S.S.G. § 3B1.1(a).  So, Mr. Dahda's total offense level was 34, with a criminal history category II, resulting in a guideline range of 168 to 210 months.  *See*

Presentence Investigation Report (Doc. 2049), ¶ 467.  Based on Mr. Dahda's conviction on

Count 1, he faced a statutory range of 10 years to life in prison.  21 U.S.C. § 841(b)(1)(A).  At

sentencing, and in response to Mr. Dahda's objections to the statutory range, the government

agreed to waive the 10 year statutory minimum under Section 841(b)(1)(A) and requested that

the court sentence Mr. Dahda under Section 841(b)(1)(C), which carries no minimum and a

maximum of 20 years in prison.

On September 30, 2015, Judge Kathryn H. Vratil sentenced Mr. Dahda to 189 months in

prison and imposed a fine of $16,985,250.  Rick Bailey represented Mr. Dahda on appeal.  On

April 4, 2017, the Tenth Circuit affirmed Mr. Dahda's convictions and sentence of

imprisonment, but reversed and remanded for the court to reconsider the amount of the fine.

*United States v. Los Dahda*, 853 F.3d 1101, 1118 (10th Cir. 2017) ("*Los Dahda I*"), *aff'd*, 138 S.

Ct. 1491 (2018).  On remand, Judge Vratil expanded the scope of resentencing to include

recalculating the drug quantity attributable to Mr. Dahda in light of the Tenth Circuit's ruling in

his brother's case, *United States v. Roosevelt Dahda*, 852 F.3d 1282 (10th Cir. 2017), *aff'd*, 138

S. Ct. 1491 (2018).  *See* Memorandum and Order (Doc. 2620).

At resentencing, the court attributed a total of 614 kilograms of marijuana to Mr.

Dahda—a reduction of nearly 300 kilograms.  Transcript of Resentencing (Doc. 2753) at 11.

Because Mr. Dahda's offense involved at least 400 kilograms but less than 700 kilograms of

marijuana, his base offense level was 26.  U.S.S.G. § 2D1.1(c)(7).  The court again added two

levels because Mr. Dahda had maintained a drug-involved premises, U.S.S.G. § 2D1.1(b)(12),

and added four levels for his leadership role in the offense, U.S.S.G. § 3B1.1(a).  Mr. Dahda's

total offense level was 32, with a criminal history category II, which resulted in a guideline range

of 135 to 168 months.  *See* Revised Presentence Investigation Report (Doc. 2687) filed

November 7, 2019, ¶ 472.  Based on Mr. Dahda's conviction on Count 1 and the government's

prior agreement to waive the statutory minimum under Section 841(b)(1)(A), he faced a statutory

range of zero to 20 years in prison.  *See* 21 U.S.C. § 856(b); *see also* 21 U.S.C. § 841(b)(1)(C).

On December 12, 2019, Judge Vratil resentenced Mr. Dahda to a controlling term of

135 months in prison and three years of supervised release.  On December 20, 2019, Mr. Dahda

appealed.  *See* Notice Of Appeal (Doc. 2719).  Defendant proceeded pro se on appeal.  On

January 8, 2021, the Tenth Circuit affirmed defendant's convictions and revised sentence.  *See*

*United States v. Los Dahda*, 842 F. App'x 243 (10th Cir. Jan. 8, 2021) ("*Los Dahda II*").

Mr. Dahda now seeks to vacate his convictions and sentence under 28 U.S.C. § 2255.

## II.     Legal Standard Governing Motions Under 28 U.S.C. § 2255

Federal law permits federal prisoners to attack the legality of their sentences in collateral

proceedings.  Title 28 U.S.C. § 2255(a) provides:

> A prisoner in custody under sentence of a court established by Act of
> Congress claiming the right to be released upon the ground that the sentence was
> imposed in violation of the Constitution or laws of the United States, or that the
> court was without jurisdiction to impose such sentence, or that the sentence was in
> excess of the maximum authorized by law, or is otherwise subject to collateral
> attack, may move the court which imposed the sentence to vacate, set aside or
> correct the sentence.

28 U.S.C. § 2255(a).

Collateral "relief under § 2255 is generally confined to situations where (a) the

'convictions and sentences [were] entered by a court without jurisdiction,' (b) the sentence

imposed was outside of the statutory limits, (c) a constitutional error occurred, or (d) a non-

constitutional error of law or an error of fact occurred that constituted a fundamental defect

which inherently resulted in a complete miscarriage of justice, *i.e.*, that rendered the entire

proceeding irregular and invalid."  *United States v. Fields*, 949 F.3d 1240, 1246 (10th Cir. 2019)

(quoting *United States v. Addonizio*, 442 U.S. 178, 185–86 (1979)), *cert. denied*, 141 S. Ct. 449 (2020).

Some § 2255 motions merit hearings.  "Section 2255(b) states, in pertinent part, that '[u]nless the [2255] motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the [district] court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.'"  *Id.* (quoting 28 U.S.C. § 2255(b)).  "The Supreme Court has interpreted this statutory language to mean that a hearing is unnecessary in those instances (a) 'where the issues raised by the motion were conclusively determined either by the motion itself or by the files and records in the trial court,' or (b) where the motion alleges circumstances 'of a kind that the District Judge could completely resolve by drawing upon his own personal knowledge or recollection.'"  *Id*. (quoting *Machibroda v. United States*, 368 U.S. 487, 494–95 (1962)).

## III.    Discussion

Mr. Dahda argues that the court should vacate his sentence under Section 2255 because appellate counsel provided ineffective assistance.  Specifically, he asserts that appellate counsel's performance was deficient because in the 2015 appeal, (1) he did not raise the issue of drug quantity, (2) he did not challenge the sufficiency of the evidence on Counts 1 and 31, (3) he did not challenge the sufficiency of the evidence and venue on Counts 73 and 88, and (4) he did not challenge defendant's sentence under the Supreme Court decision in *Alleyne v. United States*, 570 U.S. 99 (2013).[2]  Mr. Dahda also argues that he is entitled to relief on his Section 2255 motion because the government violated his right to counsel under the Sixth Amendment when it

---

[2]        After remand in 2019, Mr. Dahda chose to represent himself pro se at sentencing and on appeal of his revised sentence.  Therefore, Mr. Dahda's claims related to the performance of appellate counsel are limited to counsel's performance during the 2015 appeal.

recorded and listened to his telephone conversations with counsel from Corrections Corporation of America ("CCA") in Leavenworth, Kansas.

A.  Claims that Appellate Counsel Provided Ineffective Assistance

The Sixth Amendment provides that in "all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense."  U.S. Const. amend. VI.  And the "right to counsel is the right to the effective assistance of counsel."  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

To prevail on an ineffective assistance of counsel claim, a petitioner must satisfy *Strickland*'s two-part test.  First, the petitioner "must show that counsel's performance was deficient."  *Id.* at 687.  This requires a showing that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.* Second, the petitioner "must show that the deficient performance prejudiced the defense."  *Id.*  In other words, "the defendant must show that his counsel's performance 'fell below an objective standard of reasonableness,' and that the deficient performance resulted in prejudice."  *United States v. Rodriguez-Rivera*, 518 F.3d 1208, 1216 (10th Cir. 2008) (quoting *Strickland*, 466 U.S. at 688).  To prevail on an ineffective assistance of counsel claim, a petitioner must satisfy both *Strickland* prongs.  *United States v. Orange*, 447 F.3d 792, 796–97 (10th Cir. 2006).  A failure to prove either one is dispositive.  *Id.* at 797.

In the context of a claim that counsel should have raised additional or different issues on appeal, defendant has a heavy burden to overcome the presumption that counsel rendered effective assistance.  *See Strickland*, 466 U.S. at 690 ("court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment").  Appellate counsel "need not (and should not)

raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citing *Jones v. Barnes*, 463 U.S. 745 (1983)).

To determine whether counsel performed deficiently by omitting an argument, the court examines the merits of the omitted argument. *Hooks v. Ward*, 184 F.3d 1206, 1221 (10th Cir. 1999). If the omitted argument is "so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal, its omission may directly establish deficient performance." *Cargle v. Mullin*, 317 F.3d 1196, 1202–03 (10th Cir. 2003). In other words, counsel's failure to raise an argument that is a "dead-bang winner" directly establishes deficient performance. *United States v. Challoner*, 583 F.3d 745, 749 (10th Cir. 2009) (quoting *United States v. Cook*, 45 F.3d 388, 395 (10th Cir. 1995)). A "dead-bang winner" is "an issue which is obvious from the trial record and one which probably would have resulted in a reversal on appeal." *Banks v. Reynolds*, 54 F.3d 1508, 1515 n.13 (10th Cir. 1995) (citing *Cook*, 45 F.3d at 395). If the omitted argument is "not so compelling," the court evaluates the merits of the omitted argument "relative to the rest of the appeal" and gives "deferential consideration . . . to any professional judgment involved in its omission." *Cargle*, 317 F.3d at 1202. To establish prejudice in this context, defendant must show a "reasonable probability" that but for counsel's failure to raise an issue, the appeal would have resulted in a different outcome. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Defendant bears the burden to show that he is entitled to relief by a preponderance of the evidence. *Sa'Ra v. Raemisch*, 536 F. App'x 783, 787–88 (10th Cir. 2013).

### 1. Failure to Challenge Drug Quantity

Mr. Dahda claims that in his 2015 appeal, his appellate counsel, Mr. Bailey, provided

ineffective assistance because he did not challenge the drug quantity that the court used to determine his offense level. *See* Motion to Vacate (Doc. 2952) at 4–5. Even if the court assumes deficient performance, Mr. Dahda has not shown that Mr. Bailey's failure to raise this issue prejudiced him. As noted above, the Tenth Circuit did not address the issue of drug quantity in Mr. Dahda's case. Even so, Judge Vratil expanded the scope of resentencing to include recalculating the drug quantity attributable to Mr. Dahda in light of the Tenth Circuit's ruling in his brother's case. *See* Memorandum and Order (Doc. 2620). At resentencing, Judge Vratil attributed a total of 614 kilograms of marijuana to Mr. Dahda—a reduction of nearly 300 kilograms from the first sentencing. *See* Transcript of Resentencing (Doc. 2753) at 11. As a result, Judge Vratil resentenced Mr. Dahda to 135 months, *i.e.* 54 months less than his prior sentence. Mr. Dahda fails to explain how Mr. Bailey's failure to raise the issue of drug quantity in the first appeal affected his ultimate sentence. The court thus denies his Motion to Vacate relying on this ground.

### 2. Failure to Challenge Convictions on Counts 1 and 31

Mr. Dahda claims that in his 2015 appeal, his appellate counsel provided ineffective assistance because he did not challenge the sufficiency of the evidence for maintaining a drug premises (Count 31) or conspiracy to maintain a drug premises (Count 1). Mr. Dahda states that trial counsel raised this issue and preserved it on the record, but he does not otherwise explain how appellate counsel provided ineffective assistance on appeal. *See* Motion to Vacate (Doc. 2952) at 5. Based on Mr. Dahda's citations to the record and the letters from appellate counsel attached to his motion, he apparently argues that counsel should have argued that the evidence was insufficient to establish that he maintained a premises for the "primary purpose" of distributing marijuana. *See* Letter from Mr. Bailey to Mr. Dahda dated May 9, 2016 (Doc. 2952-

5) at 1 (Mr. Bailey explained that he intended to argue that the court "should have required that the jury find the principal purpose of the premises was the distribution of drugs").

As noted above, appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. at 288 (citation omitted).  Indeed, the "process of 'winnowing out weaker arguments and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. at 536 (quoting *Jones v. Barnes*, 463 U.S. at 751–52).

Mr. Dahda has submitted a letter from his appellate counsel which explains explicitly that he thought the Tenth Circuit likely would reject the sufficiency of the evidence argument challenging the drug premises convictions (Count 1 for conspiracy and Count 31 for the substantive conviction) and he "did not want to distract the Tenth Circuit from [other] issue[s] where we [stood] a strong chance of winning by including an argument which was weak and likely to lose."  Letter from Mr. Bailey to Mr. Dahda dated June 23, 2016 (Doc. 2952-9) at 2–3.  Mr. Dahda neither alleges nor explains how a challenge to the sufficiency of the evidence on the charges involving maintaining a drug premises was a "dead-bang winner."  So the court gives "deferential consideration" to appellate counsel's decision to omit this particular argument.  *Cargle*, 317 F.3d at 1202.

For Count 1, the jury found Mr. Dahda guilty of conspiracy to (1) manufacture marijuana, (2) possess with intent to distribute marijuana, (3) to distribute marijuana, and (4) maintain drug-involved premises.  *See* Verdict (Doc. 1433) at 1.  As it applied to the agreement to manufacture marijuana, to possess marijuana with intent to distribute it, and to distribute marijuana, the jury found that "the overall scope of the agreement involved more than

1,000 kilograms of marijuana." Instructions To The Jury (Doc. 1430), No. 19. On direct appeal, the Tenth Circuit concluded that the government presented sufficient evidence that Mr. Dahda had joined the conspiracy charged in count one and that the conspiracy involved 1,000 kilograms of marijuana. *Los Dahda I*, 853 F.3d at 1110–11. Mr. Dahda does not explain how a challenge to the sufficiency of the evidence that he conspired to maintain a drug-involved premises would have affected the Tenth Circuit's determination that the government had presented sufficient evidence on Count 1 to establish the other three agreements with a scope involving more than 1,000 kilograms of marijuana. He therefore has failed to show that appellate counsel's failure to raise this issue on appeal was deficient or prejudicial.

To prevail on Count 31, the government had to establish that (1) on or about November 16, 2011, Mr. Dahda opened, leased, rented, used, or maintained Gran-Daddy's BBQ for the purpose of storing or distributing marijuana; and (2) he knew that the place was or would be used for such purpose. *See* Instructions to the Jury (Doc. 1430), No. 27. At trial, the government presented evidence that Mr. Dahda owned a financial interest in Gran-Daddy's BBQ, received mail at the business, and had sold marijuana on several occasions at the business. Specifically, the government presented evidence that during the evening of November 16, 2011, after Gran-Daddy's BBQ had closed and when no one was in the business, Mr. Dahda arrived and once inside the business, he sold high-grade marijuana to an undercover agent. Mr. Dahda apparently claims that he primarily used Gran-Daddy's BBQ as a legitimate restaurant. But, to establish a violation of 21 U.S.C. § 856(a), the government was not required to establish that marijuana distribution was the "sole purpose of the premises." *United States v. Mata-Rodriguez*, 445 F. App'x 80, 83 (10th Cir. 2011). Instead, the government had to establish only that during the evening of November 16, 2011, Mr. Dahda made the business available to use for the

purpose of unlawfully distributing marijuana.  *See United States v. McCullough*, 457 F.3d 1150, 1161 (10th Cir. 2006) (house used as primary residence also can be used for purpose of distributing drugs in violation of Section 856(a)(2) on specific occasions).  Because the restaurant was closed with no other occupants when Mr. Dahda arrived and conducted the marijuana sale, the evidence was sufficient to establish the elements of Section 856(a).  Therefore, even if appellate counsel had raised this challenge on appeal, the Tenth Circuit likely would have rejected it.

Given the wholesale absence of any merit of a challenge to the sufficiency of the evidence on Counts 1 and 31, the court concludes that appellate counsel's decision to omit this challenge on appeal was neither deficient nor prejudicial.  The court thus denies Mr. Dahda's Motion to Vacate on this ground.

### 3.   Failure to Challenge Convictions on Counts 73 and 88

The jury found Mr. Dahda guilty on Counts 73 and 88.  They charged that "in the District of Kansas and elsewhere," Mr. Dahda attempted to possess marijuana with intent to distribute it.  Both at the initial sentencing and again on resentencing, the court sentenced Mr. Dahda to 60 months in prison on Counts 73 and 88, with both sentences to run concurrently to all other counts including his longer term of imprisonment on Counts 1 and 31 (originally 189 months, reduced to 135 months).  *See* Amended Judgment in a Criminal Case (Doc. 2711) at 2.  Mr. Dahda claims that his appellate counsel, in the 2015 appeal, provided ineffective assistance because he did not challenge the sufficiency of the evidence and venue on Counts 73 and 88.[3] *See* Motion to Vacate (Doc. 2952) at 5–6.

---

[3]      The government argues that under the concurrent sentence doctrine, Mr. Bailey's failure to challenge Counts 73 and 88 on appeal was not prejudicial because the 60-month sentences on each of those counts ran concurrent to the 135-month sentences on each of Counts 1 and 31.  Under the concurrent sentence doctrine, where a defendant challenges only the length of his sentence, the court may exercise its discretion "to decline to review the

Count 73 was based in part on evidence that in Nebraska, law enforcement officers arrested co-defendant Justin Pickel who had some 38 pounds of high grade marijuana concealed in a false compartment of his truck in a toolbox/fuel tank.  The next day, investigators monitored an intercepted call between Mr. Dahda and his brother Roosevelt.  During the call, Mr. Dahda, who was in California at the time of the call, informed Roosevelt that "We just lost half of what we worked for, so you know we'll run like conservative status."  Presentence Investigation Report (Doc. 2049), ¶ 95.  The government presented other phone calls and evidence to establish that the marijuana found in Mr. Pickel's truck ultimately was bound for Kansas. The jury found Mr. Dahda and his brother guilty on Count 73, but found Mr. Pickel not guilty of the same count. At trial, defendant objected that the government had not presented sufficient evidence that Mr. Pickel's possession of marijuana in Nebraska established that Mr. Dahda attempted to possess the marijuana in Kansas.  *See* Trial Transcript – Vol. 27 (Doc. 2164) at 5416–17.  Mr. Dahda now asserts that Mr. Bailey provided ineffective assistance on appeal because he did not argue that (1) the verdicts for the three defendants charged in Count 73 were inconsistent and (2) the government did not present sufficient evidence that Mr. Dahda committed the crime in Kansas.

Mr. Dahda first asserts that the jury verdicts were inconsistent because it found Mr. Pickel not guilty as a principal and Mr. Dahda guilty as an aider and abettor.  As his appellate counsel explained to Mr. Dahda during the 2015 appeal, "consistency in verdicts is not required"

---

length of a concurrent sentence, because the defendant suffers neither prejudice nor collateral consequence as a result of the sentence." *United States v. Harris*, 695 F.3d 1125, 1139 (10th Cir. 2012).  For Counts 73 and 88, however, Mr. Dahda asserts that Mr. Bailey should have challenged the convictions, not the length of the sentences.  Because the court required Mr. Dahda to pay a special assessment of $100 under 18 U.S.C. § 3013 on each count of conviction, he is "not in fact serving concurrent sentences." *Ray v. United States*, 481 U.S. 736, 737 (1987) (per curiam) (where petitioner was required to pay special assessment on each count, appellate court required to review validity of challenge to conviction on each count despite concurrent prison terms).  The court therefore reviews the merit of Mr. Dahda's ineffective assistance claim on Counts 73 and 88.

and an inconsistent verdict provides no reason for setting a conviction aside.[4]  *United States v. Irvin*, 682 F.3d 1254, 1273 (10th Cir. 2012) (quoting *United States v. Powell*, 469 U.S. 57, 64–66 (1984)); see Letter from Mr. Bailey to Mr. Dahda dated June 23, 2016 (Doc. 2952-9) at 3 (jury verdicts in criminal cases are not required to be consistent).  In addition, because trial counsel did not file a motion for new trial based on the consistency of the verdicts, Mr. Dahda would have had to show plain error to prevail on appeal.  Finally, even if appellate counsel had raised this issue and Mr. Dahda had prevailed on appeal, the court would have vacated his conviction only on Count 73.  Except for a reduction of $100 in his total special assessment, his operative sentence—including prison term of 135 months (originally 189 months) on Counts 1 and 31— would have remained unchanged.  Given the extremely limited benefit of a successful challenge to Count 73 and the lack of merit on this challenge "relative to the rest of the appeal," Mr. Bailey's decision not to challenge Count 73 on this ground was not deficient.

Mr. Dahda also asserts that Mr. Bailey should have challenged his conviction on Count 73 based on improper venue because he "did not live in Kansas and was not there for *some* of those phone call[s] nor [was] the called party."  Letter from Mr. Dahda to Mr. Bailey dated March 9, 2016 (Doc. 2952-3) at 2–3 (emphasis added).  Generally, "the government must prosecute an offense in a district where the offense was committed."  Fed. R. Crim. P. 18.  In the context of an attempt crime, the government must establish that the defendant committed some "act which constitutes a substantial step toward the commission of the substantive offense in the District of Kansas."  *United States v. Foy*, 641 F.3d 455, 468 (10th Cir. 2011).  Mr. Dahda does not deny that he was in Kansas for at least some of the phone calls about the shipment of

---

[4]     In any event, the verdict did not indicate whether Mr. Dahda was guilty on Count 73 as a principal or as an aider and abettor.  To the extent that the jury found Mr. Dahda guilty as an aider and abettor, it properly could have concluded that his brother Roosevelt was the principal he aided.

marijuana that law enforcement officers intercepted in Nebraska.  In addition, Count 73 charged
Mr. Dahda both as a principal and as an aider and abettor.  For offenses charging aiding and
abetting liability, venue is proper even where the defendant did not do anything in the district if
he specifically "aided and abetted" the criminal acts of others inside the district and the
government asked the court to instruct the jury on the issue.  *Id*. at 467 (quoting *United States v.
Lam Kwong–Wah*, 924 F.2d 298, 302 (D.C. Cir. 1991)).  Mr. Dahda has not shown that an
appellate challenge to venue on Count 73 was a "dead-bang winner."  And, in any event, as
already noted, even a successful challenge to Mr. Dahda's conviction on Count 73 would not
have produced a different prison term.  In these circumstances, appellate counsel's decision to
omit this argument on appeal in favor of several other issues that potentially would shorten Mr.
Dahda's prison term was not deficient.

  For Count 88, the government presented evidence that (1) on May 22, 2012, Mr. Park
told Mr. Swift that he planned to send him $84,700 by referencing "we got" $80,000 and "the big
one" had $4,700, (2) later on May 22, Mr. Park sent a FedEx package from Kansas to Mr. Swift
in California; (3) after the government detained the package on May 23, law enforcement agents
found $84,700 in U.S. currency in the package, along with a yellow piece of paper with the
handwritten message "80k (us) L- 4,700;" and (4) Mr. Park had provided $80,000, Los Dahda
had provided $4,700, and the entire $84,700 was to be used to purchase high grade marijuana to
distribute in Kansas.  Mr. Dahda's Presentence Investigation Report (Doc. 2687), ¶ 109; *see also*
Mr. Park's Presentence Investigation Report (Doc. 2058), ¶ 109; Mr. Swift's Presentence
Investigation Report (Doc. 1674), ¶ 121.  Mr. Dahda asserts that appellate counsel should have
re-asserted on appeal trial counsel's argument that Mr. Dahda was entitled to acquittal on
Count 88 because no witness testified that Mr. Park or Mr. Swift had authority to spend Mr.

Dahda's $4,700 on marijuana.  *See* Trial Transcript – Vol. 27 (Doc. 2164) at 5417.  In response to Mr. Dahda's letters, which raised a number of potential challenges including Counts 73 and 88, Mr. Bailey explained that he decided to pursue four main arguments on appeal which did not include a challenge to Count 88.  *See* Letter from Mr. Bailey to Mr. Dahda dated May 9, 2016 (Doc. 2952-5) at 2 ("There are some other minor issues but I don't think we gain anything by raising them.  I think these [four] issues are our best chance of getting your sentence reversed and a lower sentence imposed.").  Again, because Mr. Dahda offers no explanation how a challenge to Count 88 was a "dead-bang winner," the court gives "deferential consideration" to appellate counsel's decision to omit this argument.  *Cargle*, 317 F.3d at 1202.

On appeal, Mr. Dahda faced a substantial challenge to establish that the court erred by denying his motion for judgment of acquittal.  When the court decides a motion for judgment of acquittal, it must view the evidence in the light most favorable to the government.  *Los Dahda I*, 853 F.3d at 1106.  The court must uphold a guilty verdict if "any rational trier of fact could have found defendant guilty . . . beyond a reasonable doubt."  *United States v. Xiang*, 12 F.4th 1176, 1184 (10th Cir. 2021) (quoting *United States v. Delgado-Uribe*, 363 F.3d 1077, 1081 (10th Cir. 2004)).  The court can consider direct and circumstantial evidence, plus reasonable inferences drawn from that evidence.  *Los Dahda I*, 853 F.3d at 1106.  "[T]he evidence, 'together with the reasonable inferences to be drawn therefrom, must be substantial, but it need not conclusively exclude every other reasonable hypothesis and it need not negate all possibilities except guilt.'"  *United States v. MacKay*, 715 F.3d 807, 812 (10th Cir. 2013) (quoting *United States v. Kieffer*, 681 F.3d 1143, 1152 (10th Cir. 2012)).

In a Motion for Return of Property, Mr. Dahda recently asserted that he lawfully acquired the $84,700 and had Mr. Park send it in a Federal Express package to Mr. Swift in California to

hold for Mr. Dahda's later purchase of land.  *See* Memorandum and Order (Doc. 2877) filed December 2, 2020 at 15.  At trial, Mr. Dahda did not testify or otherwise present evidence to support this theory.  Based on the direct and circumstantial evidence at trial, plus reasonable inferences from that evidence, the court agrees with Judge Vratil's conclusion.  That is, when viewed in the light most favorable to the government, the evidence was sufficient for a reasonable jury to find Mr. Dahda guilty beyond a reasonable doubt on Count 88.  Even if Mr. Dahda somehow could show that a challenge to the ruling on his motion for judgment of acquittal likely would have succeeded, he has not shown that Mr. Bailey's decision not to raise the issue was deficient.  As with Count 73, if Mr. Dahda had prevailed on a challenge to his conviction on Count 88, his operative sentence would have remained unchanged except for the $100 special assessment on Count 88.  Given the extremely limited benefit of a successful challenge to Count 88 "relative to the rest of the appeal," Mr. Bailey did not perform deficiently when he elected not to raise this issue.  *Cargle*, 317 F.3d at 1202.

### 4.  Failure to Challenge Sentence Under *Alleyne*

Mr. Dahda claims that in his 2015 appeal, counsel provided ineffective assistance because he did not assert that the sentence was erroneous under *Alleyne v. United States*, 570 U.S. 99 (2013).  *See* Motion to Vacate (Doc. 2952) at 6.  As explained above, Mr. Dahda can establish deficient performance if he shows that appellate counsel omitted an issue that was a "dead-bang winner" or that was so strong relative to the rest of the appeal, it was unreasonable to omit it.  Mr. Dahda claims that counsel should have raised the *Alleyne* argument.  But Mr. Dahda ignores the fact that in the initial appeal brief, his appellate counsel raised the argument that a jury finding on drug quantity is necessary to go beyond the default statutory range in subsection (b)(1)(D) of § 841, which—in the context of this case—functions as an equivalent of

an *Alleyne* claim.  *See United States v. Los Dahda*, 10th Cir. No. 15-3236, Brief of Appellant filed May 20, 2016 at 37–40 (arguing that because jury made no specific finding of quantity, defendant could only be sentenced for an indeterminate quantity under Section 841(b)(1)(D) with a five-year statutory maximum).  In addition, in the reply brief, appellate counsel specifically cited *Alleyne* to support this same argument.  *See* Reply Brief of Appellant filed September 26, 2016 at 20–21.  Because Mr. Bailey raised the *Alleyne* issue on appeal, Mr. Dahda cannot establish deficient performance.

Even if Mr. Bailey had failed to raise *Alleyne*, Mr. Dahda could not establish prejudice. In his Motion to Vacate, Mr. Dahda asserts that the *Alleyne* argument was a "dead-bang winner," Motion to Vacate (Doc. 2952) at 6, but he never explains how *Alleyne* applies to his case.  Based on the first appeal and Mr. Dahda's prior pro se filings, he apparently claims that the court erred by altering the prescribed statutory range under subsection 841(b)(1)(D) because the jury failed "to find his individual reasonably foreseeable drug attribution in direct contravention of *Alleyne*."  Motion for Immediate Release (Doc. 2761) at 5.  Mr. Dahda continues to ignore the Tenth Circuit's rejection of a substantially similar argument in the appeal challenging his original sentence.  *Los Dahda I*, 853 F.3d at 1116–17 (rejecting challenge that his "sentence [beyond the 5-year statutory maximum in Section 841(b)(1)(D)] violates the Constitution because the jury did not specifically find the marijuana quantity involved in the conspiracy"); *see also Roosevelt Dahda*, 852 F.3d at 1292 (applying reasoning from companion *Los Dahda* decision; "Roosevelt's sentence under 21 U.S.C. § 841(b)(1)(C) did not constitute error, much less plain error" based on jury finding that conspiracy involved 1,000 kilograms or more of marijuana).  As the Tenth Circuit explained in *Los Dahda I*, the district court did not err by applying the statutory range under Section 841(b)(1)(C)—rather than Section 841(b)(1)(D)—

because the jury found beyond a reasonable doubt that the conspiracy had involved 1,000 kilograms or more of marijuana." *Los Dahda I*, 853 F.3d at 1116–17.

After Judge Vratil resentenced Mr. Dahda, he again argued in his pro se appeal that under *Alleyne*, his sentence should be limited to five years, the statutory maximum for less than 50 grams of marijuana under § 841(b)(1)(D). The Tenth Circuit rejected Mr. Dahda's argument, agreeing with this court that the opinion in Mr. Dahda's first appeal was the law of the case. *Los Dahda II*, 842 F. App'x at 245–46. Both the law of the case doctrine and the mandate rule compel this court to reject Mr. Dahda's present challenge that Mr. Bailey's purported failure to raise *Alleyne* was prejudicial. *See* Judge Vratil's Sentencing Memorandum (Doc. 2709) filed December 17, 2019 at 6–8 (citing *Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181, 1183 (10th Cir. 1995) and *Ute Indian Tribe of the Uintah & Ouray Reservation v. Utah*, 114 F.3d 1513, 1520–21 (10th Cir. 1997)).

In addition to the obstacles imposed by the law of the case doctrine and the mandate rule, Mr. Dahda has failed to show that *Alleyne* requires that the statutory limits of Section 841(b)(1)(D) apply. A jury need not find a specific quantity of marijuana to trigger the higher statutory penalties of § 841(b)(1)(A)–(C) if—as here—the jury instructions include as an element of the crime, that the "overall scope of the agreement" involved a sufficient amount of marijuana to trigger the higher statutory penalties. Instructions To The Jury (Doc. 1430), No. 19; *Los Dahda I*, 853 F.3d at 1117; *see United States v. Ford*, No. CR 10-20129-07-KHV, 2021 WL 1721054, at *4 (D. Kan. Apr. 30, 2021), *appeal dismissed*, No. 21-3083, 2021 WL 5467261 (10th Cir. July 21, 2021) (citing *Los Dahda I*, 853 F.3d at 1116–17); *see also United States v. Collazo*, 984 F.3d 1308, 1336 (9th Cir. 2021) (en banc) (defendant convicted of conspiracy under § 846 is subject to enhanced statutory penalties under § 841(b)(1)(A)–(B) if government proves

beyond reasonable doubt underlying § 841(a)(1) offense "involved" drug type and quantity set forth in § 841(b)(1)(A)–(B)).

Even if *Alleyne* required that the statutory limits of Section 841(b)(1)(D) apply to conspiracies involving marijuana distribution, Mr. Dahda has not shown that appellate counsel's performance prejudiced him.  Count 1 also charged that Mr. Dahda conspired to maintain a drug-involved premises in violation of Section 856(b), which includes a statutory maximum of 20 years without regard to drug quantity.  *See* Memorandum and Order (Doc. 2620) at 9; 21 U.S.C. § 856(b).  Likewise, the jury found Mr. Dahda guilty on Count 31 for the substantive offense of maintaining a drug-involved premises, which again includes a statutory maximum of 20 years.  *See* Memorandum and Order (Doc. 2620) at 9.  Finally, even if a five-year statutory maximum applied to both Counts 1 and 31, the court arguably could have stacked the sentences on the various counts to reach a guideline range exceeding the statutory maximum for a single count of conviction.  *See id.* at 10–11 (citing U.S.S.G. § 5G1.2(d), App. Note 1 to U.S.S.G. § 5G1.2(d), and 18 U.S.C. § 3584).

In sum, Mr. Dahda has not established that appellate counsel failed to raise an *Alleyne* argument or that counsel's purported failure to do so prejudiced defendant.

B.      Sixth Amendment Claim Based on Recording of Attorney-Client Calls

Mr. Dahda argues that the government violated his Sixth Amendment right to counsel when government counsel acquired and listened to audio recordings of his telephone calls with counsel.  *See* Motion to Vacate (Doc. 2952) at 6–7.  The government asserts that Mr. Dahda procedurally defaulted his claim because he did not raise it on direct appeal.  *See* Government's Response to Defendant's Motion to Vacate (Doc. 2965) at 25–27.

A defendant's failure to raise an issue on direct appeal can have important consequences for a § 2255 motion. "[W]hen a defendant 'fails to raise an issue on direct appeal, he is barred from raising the issue in a § 2255 proceeding, unless he establishes either cause excusing the procedural default and prejudice resulting from the error or a fundamental miscarriage of justice if the claim is not considered.'" *United States v. Torres-Laranega*, 473 F. App'x 839, 842 (10th Cir. 2012) (quoting *United States v. Cox*, 83 F.3d 336, 341 (10th Cir. 1996)); *see also United States v. Frady*, 456 U.S. 152, 166 (1982) ("For this reason, we have long and consistently affirmed that a collateral challenge may not do service for an appeal."). To establish sufficient "cause" to set aside his failure to appeal directly, Mr. Dahda must "show some external objective factor—such as governmental interference, unavailability of the relevant factual or legal basis, or ineffective assistance of counsel—prevented him from raising the issue on direct appeal." *Torres-Laranega*, 473 F. App'x at 842 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Alternatively, to satisfy the fundamental miscarriage of justice exception, Mr. Dahda must make "a credible showing of actual innocence." *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013). To demonstrate actual innocence, Mr. Dahda must demonstrate "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623–24 (1998) (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)). To satisfy this "demanding" standard, *House v. Bell*, 547 U.S. 518, 538 (2006), a petitioner must ordinarily "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Ultimately, Mr. Dahda must show that absent a constitutional error and in light of all the evidence, "it is more likely than not that no reasonable juror would have found

[him] guilty beyond a reasonable doubt." *Black v. Workman*, 682 F.3d 880, 915 (10th Cir. 2012) (alteration in original) (quoting *Schlup*, 513 U.S. at 327).

Mr. Dahda first raised the claim that government counsel had accessed his calls with counsel in 2019, on remand after his first appeal.[5]  Therefore, he could have raised the issue in his pro se appeal of the final sentence.  Mr. Dahda has not filed a reply brief which addresses his failure to raise the Sixth Amendment claim in his appeal.  Likewise, in his initial motion, he has not asserted sufficient "cause" for failing to raise the issue or shown a "credible showing of actual innocence."  *McQuiggin*, 569 U.S. at 392.  The court thus concludes that Mr. Dahda has procedurally defaulted his claim that the government violated his Sixth Amendment right to counsel.

Even if Mr. Dahda had raised his Sixth Amendment claim in his pro se appeal, the claim lacks any substantive merit.  In consolidated proceedings arising from the government's accessing recordings of attorney-client phone calls at CCA, the Honorable Julie A. Robinson determined that a defendant raising such claims in a Section 2255 motion must satisfy a threshold showing.  *In re CCA Recordings 2255 Litigation v. United States*, No. 19-2491-JAR, 2021 WL 1168963, at *5 (D. Kan. Mar. 26, 2021).  Specifically, for audio recordings, a petitioner must show:  (1) the telephone recording exists; (2) a given call contains protected

---

[5]      On May 15, 2019, before resentencing, Judge Vratil held a hearing on various motions including Mr. Dahda's Motion for Fed. R. Cim. P. 16(e) Discovery and Return of Property Pursuant to Fed. R. Crim. P. 41(g) (Doc. 2573).  In that motion, Mr. Dahda asked that the court direct the government "to identify whether attorney-client communications have been provided by CCA in this case and, if so, whether the AUSA or case agents have reviewed the recordings" and further provide "notice of whether any of our client's confidential attorney-client communications are in possession of the USAO in relation to any other case." *Id*. at 13.  At the hearing, government counsel stated that after a search, she had found no evidence that CCA had recorded any of Mr. Dahda's calls with his attorney.  Transcript of Motions Hearing on May 15, 2019 (Doc. 2617) at 6.  Both government counsel and Mr. Dahda noted that the FPD had evidence that two of Mr. Dahda's calls to his mother were recorded and accessed four times. *Id*. at 6–7; *see id.* at 12–13.  Even so, defendant asserted no basis for claiming that the calls to his mother were privileged and provided no evidence that government counsel had recorded or accessed the calls to his attorney.  Judge Vratil thus overruled Mr. Dahda's motion.

attorney-client communication, *i.e.*, communication that relates to legal advice or strategy sought by the client; and (3) an affidavit from defense counsel confirming that the nature and purpose of the call(s) were within the ambit of protected communication, including but not limited to defense preparation, plea negotiations, or review of discovery.  *Id*.  Judge Robinson set forth this threshold requirement to "assist in eliminating claims where it was clear that no protected communication existed, for example, where there was no recording at all, the recording was not audible or visible, or the purpose of the conversation was not to seek legal advice or strategy."  *United States v. Rowlette*, No. 13-20125-JAR-13, 2021 WL 1736876, at *8 (D. Kan. May 3, 2021).

Mr. Dahda continues to speculate that the government recorded and accessed his calls with counsel but he never has produced any evidence of such calls.  Mr. Dahda and his former counsel advised the FPD of his suspicion, but the FPD has not entered an appearance on his behalf or provided him any evidence that government counsel recorded or accessed his privileged calls with counsel.[6]  Based on the FPD's prior inquiry and government counsel's representations, it appears that the government only recorded and accessed two non-privileged phone calls between Mr. Dahda and his mother.  Mr. Dahda and his former counsel apparently assume that government counsel must have listened to their privileged calls because they did so in other cases.  Absent some evidence or credible allegation that the government recorded and listened to Mr. Dahda's calls with counsel, however, Mr. Dahda cannot establish that he is entitled to relief under Section 2255.  *See United States v. Sloan*, No. 13-40025-JAR-3, 2021 WL 3617312, at *5 (D. Kan. Aug. 16, 2021) (dismissing Section 2255 motion based on petitioner's

---

[6]    After reviewing jail calls beginning on January 1, 2010, the FPD identified 104 clients with potential claims based on the recording of attorney-client calls at CCA.  *See* Transcript of Motions Hearing of October 9, 2018 (ECF Doc. 673 in *United States v. Carter*, D. Kan. No. 16-20032-02-JAR) at 1509–49.  Mr. Dahda does not assert that he is one of the 104 potential call clients that the FPD identified.

conclusory assumption and speculation that because government acquired and listened to calls in some other cases, government counsel obtained his attorney-client recordings and listened to them); *United States v. Avalos*, No. 13-20026-JAR-01, 2021 WL 1426771, at *4 (D. Kan. Apr. 15, 2021) (summarily dismissing Section 2255 motion where, after review of the recordings turned over by the government, FPD did not enter appearance for petitioner or supplement his pro se motion and defendant did not present evidence that a recording of any conversation or meeting with counsel exists or satisfied the threshold criteria for a protected communication set forth in *Black*).  Therefore, the court denies Mr. Dahda's Motion to Vacate on this ground.

### IV.    Conclusion

The court concludes that the records of the case conclusively show that Mr. Dahda is not entitled to relief on the claims asserted in his motion.  28 U.S.C. § 2255(b).  Thus, the court is not required to hold a hearing on his motion.  *See United States v. Galloway*, 56 F.3d 1239, 1240 n.1 (10th Cir. 1995).

Rule 11 of the Rules Governing Section 2255 Proceedings requires the court to "issue or deny a certificate of appealability when it enters a final order adverse" to the petitioner.  A court may grant a certificate of appealability only "if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A petitioner satisfies this burden if "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quotation marks and citations omitted).  The court concludes that no reasonable jurist would find the court's assessment of Mr. Dahda's claims debatable or wrong.  *See id.*  The court thus declines to issue a certificate of appealability for Mr. Dahda's claims in his Motion to Vacate under 28 U.S.C. § 2255 (Doc. 2952).

**IT IS THEREFORE ORDERED BY THE COURT THAT** Los Dahda's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2225 (Doc. 2952) is denied.

**IT IS FURTHER ORDERED THAT** a certificate of appealability for the ruling on Mr. Dahda's Section 2255 motion is denied.

**IT IS SO ORDERED.**

**Dated this 7th day of January, 2022, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**